BERLIN v. CHAMPION SPARK PLUG CO.

1. CONTRACTS—OFFER OF BONUS—ACCEPTANCE.

In an action by a dealer in automobile supplies for the bonus offered by defendant, manufacturer of spark plugs, for the sale of said plugs, in a circular sent to plaintiff, where plaintiff followed the instructions of defendant and filled out, signed, and mailed the attached coupon as directed by defendant, *held*, that a contract was entered into.

2. SAME—CONSTRUCTION.

Said contract construed, and *held*, to be an agreement to pay plaintiff the bonus on the entire number sold by him, and that it was not limited to 5,000, as claimed by defendant.

3. SAME—FRAUD—EVIDENCE.

The fact that plaintiff received a discount on each plug, equal to the bonus, from the jobber with whom he dealt, in consideration of ordering in large quantities, buying other hardware of him, and paying promptly instead of taking the usual credit, *held*, not to be in fraud of defendant.

Error to Wayne; Dingeman (Harry J.), J. Submitted October 8, 1920. (Docket No. 63.) Decided December 21, 1920.

Assumpsit by David Berlin against the Champion Spark Plug Company for the amount of a bonus. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Sherman D. Callender,* for appellant.

*Edmund M. Sloman* (*Morris Garvett,* of counsel), for appellee.

MOORE, C. J.   The plaintiff is a dealer in automobile

supplies in the city of Detroit. The defendant is a maker of automobile spark plugs. It sells its products in Detroit through Buhl & Sons, and other distributors.

It is the claim of the plaintiff that he bought through Buhl & Sons, during the year 1917, 29,500 spark plugs, under such circumstances as to entitle him to a 2-cent bonus. Plaintiff had purchased during 1916 from Buhl & Sons 5,000 spark plugs and early in 1917 he was paid the bonus for them. He received either from the defendant or its distributors a circular, soliciting his business, part of which read: "1917 Profit Sharing Coupon," concluding:

"If mailed before June 1, 1917, you will receive Champion minute spark plug cleaner free.

"EXTRA MONEY FOR YOU
"Detach and Mail to
"The Champion Spark Plug Co.
"Toledo, Ohio.

"Do It Today."

He claims he filled out the coupon and mailed it as directed. From time to time he bought plugs as before stated, and it was to recover the bonus this suit is brought. After hearing all the testimony the trial judge directed a verdict in favor of the plaintiff for $642.69. From a judgment for that amount the case is brought here by writ of error.

We quote from the brief:

"It is defendant's contention:

"*First.* That there was no so-called bonus contract existing between the parties hereto, for the reason that it was never accepted by defendant as required by its terms and, therefore, lacked mutuality.

"*Second.* That if said alleged contract was accepted and in force (which we deny), and if it was performed by plaintiff (which we deny), it was an agreement to pay a bonus only upon 5,000 spark plugs and not on 29,500.

"*Third.* That if there was a valid contract as to either 5,000 or 29,500 spark plugs (which we deny), plaintiff failed to perform his part of the contract by the secret code agreement by which he purchased the plugs at 2 cents each less than the regular resale price."

Counsel concludes his supplemental brief as follows:

"This was a clear case of deceit and fraud, carefully planned in advance and carried into execution secretly. Having received $590 in rebates from the jobber, he now seeks to get an additional $590 from the manufacturers out of the same transaction. All of this is in addition to the ordinary merchandise profits from handling the goods and after receiving the usual 2 per cent. discount for prompt payment. To permit this to be done, we submit, is to put a premium upon deceit and trickery in an ordinary commercial transaction."

We will now discuss the errors assigned in the order presented by counsel:

1. Was there a contract? The claim there was none is based upon a statement on the back of the coupon reading: "Without our signatures no profit-sharing agreement exists between us and under no other conditions will this profit be paid for." Plaintiff insists that other provisions of the coupon, coupled with the fact that he signed and mailed the coupon as directed, which was received by defendant, is a complete answer to the contention. On the face of the coupon is the following:

"This agreement does not bind you to purchase the full amount of Champion spark plugs signed for, but is an agreement wherein the Champion Spark Plug Co. of Toledo, Ohio, agrees to share its profits with you for your co-operation in selling more Champion spark plugs in 1917 than you did in 1916. You must buy the amount named in this agreement under No. 4 to get this extra profit sharing, payable after December 31, 1917, when you have completed the terms of

this agreement and mailed it to the Champion Spark Plug Co., with jobber's invoices attached and your signature.

"Important: Questions 1, 2, 3, 4, 5 and 7 must be answered when agreement is sent us.

"CHAMPION SPARK PLUG CO.,

"R. A. STRANAHAN,

"President.

"Toledo, Ohio."

Then follow provisions reading:

"Under our profit-sharing plan we have estimated the amount of profit accruing to you for 1917 as follows, which we hereby agree to give you December 31st, if you have taken the stipulated quantity of plugs.   *   *   *

"It is understood to earn this extra profit you may purchase in any quantity from one or several jobbers.   Champion plugs of all types and threads. * * *

"The profit-sharing agreement, to be valid, must be kept by you and entries made in spaces designated therefor of your purchases, and mailed to us not later than December 31, 1917.   This agreement is not in force until we have received the attached coupon with your signature.   It is to your advantage to keep this agreement until the expiration of the year as you will be paid the extra profit on all plugs bought in excess of the amount stipulated."

The purchase of the spark plugs followed.

The trial judge was of the opinion that a contract was made out.

2. Was the bonus to be limited to 5,000 spark plugs as claimed?   This contention is based upon the fact that in the coupon signed by the plaintiff he stated he would purchase 5,000 spark plugs, and the following which appears in the coupon:

"Should you find your Champion plug purchases for 1917 will reach a higher profit-sharing quantity than that which you have signed for, you can forward this agreement to us, together with invoices and request a new agreement for the larger quantity, and we will apply the plugs already bought on this new contract

should you so prefer. This, of course, would give you a higher profit per plug at the end of the year, but under no condition will an agreement for a higher amount be reduced to a lower amount after it is signed."

We think this language must be construed in connection with the statement as to the bonus which would be paid and what follows:

"200 to 499 Champion plugs taken during the year 1917........................1½c per plug,
"500 to 999 Champion plugs taken during the year 1917........................1¾c per plug.
"1,000 or more Champion plugs taken during the year 1917.....................2c per plug.
"It is understood to earn this extra profit you may purchase in any quantity from one or several jobbers. Champion plugs of all types and threads."

When so construed it is clear that it is only in case the number of plugs agreed to be purchased is so small the bonus is less than 2 cents a plug, that a new agreement was necessary to entitle the purchaser to the 2-cent bonus, for when the number of spark plugs purchased reached 5,000 the bonus per plug would not be increased if the purchase reached any larger amount, and there would be no reason for making a new contract, especially as the purchaser had been assured that he might purchase any quantity from one or several jobbers.

3. Is the claim well taken that plaintiff is not entitled to the bonus because he did not pay Buhl & Sons the retail price of 37 cents a plug? The testimony discloses that plaintiff put in written requests for the spark plugs desired at 37 cents a plug. Below his signature on some of these orders were marks which counsel calls a secret code agreement, indicating that plaintiff was buying the plugs at 35 cents each. The plaintiff replies that he knew nothing of the markings defendant calls a secret code and had nothing to do

with placing them there.   He testified that he bought the plugs at an agreed price of 37 cents each, and that they were billed to him at that rate.

It further appears he had an oral agreement with Buhl & Sons that if he would order a large quantity of spark plugs from them and would buy from them other hardware, and would pay each monthly bill in cash on the 10th of the following month instead of taking the usual credit, that he was to have a discount of 2 cents on each plug, and that he performed his agreement.   The salesman of Buhl & Sons confirms the plaintiff's version of the matter, and the witness in reply to an inquiry said that any arrangement they made with a customer did not affect the price Buhl & Sons paid to the defendant for the plugs.

No one contradicted the testimony of the plaintiff as to the arrangement he had with Buhl & Sons unless it can be said that the secret code indorsed upon the order of plaintiff below his signature, and about which he had no knowledge, discredits his testimony.

We think the circuit judge made a proper disposition of the case.

Judgment is affirmed, with costs to the plaintiff.

STEERE, BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.